IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRENDAN FINANCIAL, INC., | ) | |
| | ) | |
| Appellant, | ) | No. 13 C 8837 |
| v. | ) | Appeal from Case No. 12 A 01594 |
| | ) | Before Judge Jack B. Schmetterer |
| | ) | |
| EMMITT NEAL and PAULA NEAL, | ) | Judge Robert W. Gettleman |
| | ) | |
| Appellees. | ) | |
| | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| EMMITT AND PAULA NEAL, | ) | No. 14 C 4160 |
| | ) | Appeal from Case No. 12 B 26303 |
| | ) | Before Judge Jack B. Schmetterer |
| | ) | |
| | ) | Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

In these two related appeals, appellant Brendan Financial, Inc. ("Brendan") appeals from two decisions from the United States Bankruptcy Court for the Northern District of Illinois. In Case No. 13 C 8837, Brendan appeals from a final order in adversary proceeding No. 12 A 1594 in which the bankruptcy court found that the value of property owned by debtors/appellees Emmitt and Paula Neal ("the Neals") was less than $100,000. In Case No. 14 C 4160, Brendan appeals from an order in the Neals's lead bankruptcy case, No. 12 B 2605, confirming the Neals's Chapter 13 Plan of Reorganization. For the reasons discussed below, both decisions are affirmed.

## BACKGROUND

On June 29, 2012, the Neals filed a Voluntary Petition for Relief Under Chapter 13 of Title 11 of the United States Code. At the time of filing, the Neals owned a residence located at 1206 S. First Avenue, Maywood, Illinois. Carrington Mortgage Services held a first mortgage lien on the house in the amount of $151,187.49. Brendan held a second mortgage lien in the amount of $49,128. As required by Chapter 13 (11 U.S.C. § 1321), the Neals filed a Plan of Reorganization (the "Plan"). Brendan filed a proof of claim in the amount of $52,781.64. The Plan sought to treat Brendan's claim on the home as unsecured and to receive a release of Brendan's mortgage lien after completion of payments under the Plan and the entry of discharge. Brendan filed an objection to the Plan.

On October 27, 2012, the Neals filed an adversary proceeding against Brendan to effectuate the part of the Plan to which Brendan had objected. After discovery, the bankruptcy court held a trial on the merits. The sole issue in the trial was the value of the property. After hearing the evidence, the bankruptcy court entered judgment for the Neals, determining that the value of the property was less than $100,000. The court then held a separate trial on Brendan's objections to the Plan (dealing with issues not part of either appeal). After the trial, the court overruled Brendan's objections and confirmed the Plan.

## DISCUSSION

This court has jurisdiction to review both orders pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001. On appeal, this court reviews factual findings for clear error and conclusions of law de novo. Stamat v. Neary, 635 F.3d 974, 979 (7th Cir. 2011). For factual

findings, the court reviews whether "the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety." Id.

The parties agree that the sole issue raised in these appeals is whether the bankruptcy court correctly determined the value of the Neals's property. "Valuation is a question of fact, and can be overturned on appeal only if clearly erroneous." Matter of Vitreous Steel Products Co., 911 F.2d 1223, 1232 (7th Cir. 1990).

The bankruptcy court determined the value in the adversary proceeding. The trial was short and the entire transcript and exhibits have been submitted to this court. Paula Neal testified briefly describing the house and its condition. Each side then presented expert appraisal testimony. Both experts agreed on the method of valuation, using the sales comparison approach to determine value. The sales comparison approach requires the appraiser to compare the subject property to similar properties located near the subject property that have sold.

The Neals's house is 88 years old with 1256 square feet of living space. It has two bedrooms plus an enclosed porch that the Neals's use as a third bedroom. The house has one bathroom and an unfinished basement that had flooded in April 2012. The house is a frame construction, did not have a garage at the time of the bankruptcy filing, and is located on a busy street across from a "Payday" loan office.

The Neals's expert, Troy Victor, performed an inspection of the house on October 11, 2012, and completed his appraisal report on October 16, 2012. Victor compared the Neals's home to four others, and prepared a detailed report containing an analysis of the market conditions in Maywood at the time of the filing. In particular, he noted that it was difficult to find comparables because the market was distressed. Seventy five percent of all sales at that

time were through foreclosure. This required him to expand his search for comparables from within one mile to all of Maywood to find comparables sold as arm's length transactions. Three of the four comparables were over one mile from the subject property. Victor concluded that the property had a value of $60,000 on October 11, 2012. Because the housing market in Maywood was declining, he estimated that the home would have been worth slightly more (between $65,000 and $67,000) in June 2012 when the Neals filed their petition.

Brendan's expert, Antoinette Benison, compared the Neals's home to three properties. Her report indicated that she inspected the Neals's home on June 29, 2012, but she actually inspected it in July 2013. At the time she inspected the home it had a garage, but there was no garage on the date the Neals filed their petition. All the comparables used by Benison were brick construction and all had been rehabilitated. None were on busy streets. She also listed the Neal's home as having three bedrooms plus a porch.

At the close of trial, the bankruptcy court reviewed the evidence and issued an oral ruling. The court noted that both experts used the same methodology and that the methodology is well accepted by the courts, but is subject to subjective opinions based on the experience and judgment of the appraiser. According to the court, the approach tends to give the high possible value and the low possible value, leaving the court with a possible range. The court then noted that there were criticisms to be made about each of the experts. With respect to Victor, the court noted that some of his adjustments were too large, but that he had used proper comparables.

With respect to Benison, the court noted that her adjustments were too small, and in one case "went the wrong way." The court also found that she was not adequately familiar with the condition of the subject property at the time of filing, and that her assumptions were based on

4

information she received from Brendan's counsel, which was not entirely accurate. The report was also replete with typographical errors, all of which led to some doubt about her opinion.

Finally, the bankruptcy court found that because the first mortgage was stipulated in the amount of $150,465.57, all the court needed to determine was whether the value of the property "came anywhere close to $100,000." The court found that it did not and that because the value was less than $100,000 Brendan's position was defeated.

On appeal, Brendan argues that the bankruptcy court should have rejected Victor's appraisal in its entirety because he used dissimilar comparables, resulting in adjustments that were far too high. Brendan argues that its expert testified that Fannie May guidelines require gross adjustments no greater than 25 per cent, much lower than the adjustments used by Victor. Victor testified as to the problems finding appropriate comparables, however, and the court noted that some of his adjustments were too high and reached its findings with those problems in mind. Next, Brendan argues that Victor's appraisal did not render a pre-petition date value because his appraisal was as of October 11, 2012. But he adjusted his value for the declining market in Maywood, and Benison's appraisal, which she admitted was replete with errors, suffered from a similar problem.

Finally, Brendan argues that Victor was only a trainee, not a fully licensed appraiser, and that his testimony should be discounted. This argument is specious at best. Victor was qualified as an expert without objection by Brendan, and his work was supervised and certified by a certified appraiser. At the time of trial he had done over 1,000 real estate appraisals and had already testified previously before the bankruptcy court as an expert appraiser. Once qualified, the court was entitled to give Victor's testimony whatever weight if felt the testimony deserved.

This court has reviewed the transcript of the entire trial. There is nothing in the record to suggest that the bankruptcy court's finding as to the value of the Neals's home is not plausible. Stamat, 635 F.3d at 979. There was no clear error.

## **CONCLUSION**

For the reasons described above, the decisions of the bankruptcy court in cases 13 C 8837 and 14 C 4160 are affirmed.

**ENTER:**   **August 19, 2014**

_____
**Robert W. Gettleman
United States District Judge**